CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2022 5104      DIVISION: J-15      SECTION:

KIMBERLY TERRELL and KELLY DONAHUE,
individually and on behalf of all others similarly situated,

Plaintiffs

VERSUS

BWC HARVEY, LLC, f/k/a
BLACKWATER HARVEY, LLC,

Defendant

CIVIL DISTRICT COURT

FILED 2022 JUN -8 PM 3:44

FILED: _____  _____

DEPUTY CLERK

---

## CLASS ACTION PETITION FOR DAMAGES

NOW COMES Plaintiffs/Putative Class Representatives KIMBERLY TERRELL and KELLY DONAHUE, on behalf of themselves and all others similarly situated, seeking class certification and complain and allege on information and belief the following against BWC HARVEY, LLC (f/k/a BLACKWATER HARVEY, LLC):

1.      This is a class action brought pursuant to LA C.C.P. art. 591, *et seq.*, wherein Plaintiffs seek damages in relation to Defendant's ownership and operation of a hazardous liquid storage facility located at 1805 Fourth Street, Harvey, Jefferson Parish, Louisiana (the "**Facility**").

2.      Through Defendant's construction, operation, and maintenance of the Facility, it wrongfully emits substantial and unreasonable noxious odors that physically invade the Plaintiffs' and putative Class' properties.

### PARTIES

3.      Plaintiff/Putative Class Representative Kimberly Terrell resides at a home located at 2426 Chippewa Street, New Orleans, Orleans Parish, Louisiana 70130.

4.      Plaintiff/Putative Class Representative Kelly Donahue resides at a home located at 617 Napoleon Avenue, New Orleans, Orleans Parish, Louisiana 70115.

5.      Made Defendant in this action is BWC HARVEY, LLC (f/k/a BLACKWATER HARVEY, LLC), which is a Delaware corporation authorized to do business in the State of Louisiana. Defendant's corporate headquarters is located at 1111 Bagby Street, suite 1800,

1

EXHIBIT
1

Houston, Texas 77002. Defendant owns and/or operates the Facility.

6.     Defendant is liable *in solido* to Plaintiffs and the putative Class for all elements of damages allowed by Louisiana law, whether past, present or future damages, in an amount that is just and reasonable in the premises.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction because Defendant carries on a continuous and systematic part of its business within the State of Louisiana.

8.     Venue is proper in this Court pursuant to La. C.C.P. art. 74 because Plaintiffs sustained damages in Orleans Parish.

9.     Pursuant to La. C.C.P. art. 893, the damages sought by Plaintiffs satisfy the amount required to establish jurisdiction of this court and they are in an amount sufficient for trial by jury.

## FACTUAL ALLEGATIONS

10.    Defendant, its predecessors, and/or its agents constructed or directed construction of the Facility.

11.    Defendant exercises ownership and control of the Facility, which is situated on a 48 acre plot. The Facility borders the Mississippi River and is adjacent to residential properties on both the east and west banks of the Mississippi River.

12.    The Plaintiffs and putative Class reside within 1.75 miles of the Facility property boundary (the **"Class Area"**).

13.    Defendant's Facility is a storage and transport complex. It has more than 50 storage tanks that are used to store various hazardous substances, including asphalt, acids, creosote, distillates, caustic soda, and various oils. The storage and transportation of these substances generates highly odiferous noxious odors.

14.    The Plaintiffs' and putative Class' properties have been, and continue to be, invaded by fugitive noxious odors emitted from the Facility.

15.    A properly designed, operated, and maintained hazardous substance storage facility will adequately capture, remove, and dispose of noxious odors and prevent them from escaping into the ambient air as fugitive emissions.

16.    Defendant is required to abate noxious odor emissions by, among other things, operating the Facility in a manner that adequately captures, controls, and mitigates those emissions so as to prevent them from escaping into the ambient air surrounding the Facility, and by implementing other reasonably available emission mitigation, elimination, and control systems at

2

the Facility.

17.     Defendant has failed to use adequate odor mitigation strategies, processes, technologies, and/or equipment to control fugitive emissions from the Facility and prevent those fugitive emissions from physically invading the homes and properties of the Plaintiffs and putative Class.

18.     Defendant's failures to prevent off-site odors include, but are not limited to:

   a)  Utilizing inadequate systems for transporting, loading, unloading and storing hazardous substances, including the mismanagement of equipment, raw ingredients, and byproducts;

   b)  Failing to train and educate employees on safe procedures for handling Facility materials;

   c)  Failing to monitor and keep records of Facility equipment;

   d)  Failing to develop and/or implement adequate odor prevention plans;

   e)  Failing to utilize other odor prevention, elimination, and mitigation measures and technologies available to Defendant; and

   f)  Other failures revealed during discovery.

19.     Noxious odors from the Facility have interfered with activities in the surrounding areas (Class Area) and they have precluded the reasonable use and enjoyment of private and public spaces in those areas.

20.     The Facility and its emissions have been the subject of frequent and numerous complaints by residents in the nearby residential area (Class Area).

21.     The Facility's odors preclude Plaintiff/Putative Class Representative Kimberly Terrell from the ordinary and regular use of her property. The odors hinder her ability to sit outside and engage in outdoor activities.

22.     Plaintiff/Putative Class Representative Kelly Donahue describes Facility odors as follows: "Some days are worse than others. At best, the air smells like tar or petroleum. When its bad, the smell is so strong it makes me cough and makes me light-headed. I have to close all the windows, but once the smell gets in the house, it stays for a long time."

23.     More than 45 households within the proposed Class Area have contacted Plaintiffs' counsel in relation to the noxious odors originating from the Facility. Below is a small sample of what members of the putative Class have conveyed to Plaintiffs' counsel:

   a)  Putative Class Member Laquetta Zeno reported due to offensive odors from Defendant's Facility, "I cannot enjoy nice weather. The smell carries and I have to hold my breath until I get inside to avoid the smell. The odor is dense. I rarely open my windows for fresh air."

3

     b) Putative Class Member Patricia Valencia describes the offensive odors from Defendant's Facility as "Stressful, at first I thought it was a gas leak. Some early evenings the smell is so strong and toxic (gives me headaches) that we cannot sit in our patio."

     c) Putative Class Member Tyronne James reported that "The sickening fumes have exacerbated my COPD and migraine headaches. Because of the poor air quality, I do not enjoy my backyard or front porch. I spend hardly anytime outdoors/outside on my own property."

     d) Putative Class Members Stephen and Lesley Stanley reported that "The odors have been strong enough to force us indoors when we'd like to enjoy our patio. Occasionally, they were strong enough to penetrate our home and make the domicile uncomfortable for us and our cats."

     e) Putative Class Member Linda Mason indicated that the Facility's "Fumes are absolutely unacceptable. It coats the back of throat for hours. Cannot enjoy outside balcony."

     f) Putative Class Member Erica Fry reported that odor from Defendant's Facility "Smells like burnt/melting plastic and/or chemicals."

     g) Putative Class Members David Hecht and Elizabeth Thorpe described the Facility's odors as an "Acrid and foul chemical smell – often smells like tar or asphalt. Odors cause nausea and anxiety and preclude quiet enjoyment of our home."

     h) Putative Class Member Linda Joyce Collins reported that "The fumes make our eyes burn. Our throats hurt from the caught it causes. We also believe that it causes the headaches that we get. The smell is strong like asphalt."

24.   Defendant's well-documented pattern of failing to control the Facility's emissions is further demonstrated by the following:

     a) Between August 2018 and April 2022, approximately over 1,500 complaints were made to the Louisiana Department of Environmental Quality (the "LDEQ"). For example:

       i. A complaint was received on March 27, 2022 citing, "I noticed a petrochemical odor at 9 am on my back porch, which was still there at 10am. I wanted to enjoy the beautiful weather and have breakfast on my porch, but stayed inside because of this."

       ii. A complaint was received on March 20, 2022 citing, "Burning tar type smell, burning my throat to breathe… Feels like I cant get fresh air."

       iii. A complaint was received on March 4, 2022 citing, "The gassing of the Irish Channel was so bad last night that the smell lingered in our house for hours this morning. The toxic fumes woke us up…"

       iv. A complaint was received on February 27, 2022 citing, "Foul petrochemical smell inside house. Smells tar like. Could be anything like , creosote, asphalt, or some chemical like that. Sick and tired of these toxic fumes caused by BWC."

       v. A complaint was received January 30, 2022 citing, "Asphalt smell so strong it woke me up from my sleep inside my house. It's making me feel like I'm choking and cannot get enough air."

       vi. A complaint was received on August 2, 2020 citing, "Smells strongly of petroleum."

      vii.   A complaint was received on July 23, 2020 citing, "Smell of petroleum."

     viii.   A complaint was received on July 15, 2020 citing, "Again, we have a strong tar-like smell in the air.";

   b)  The LDEQ has identified Defendant as the "primary source" of odors affecting residents in the Class Area;

   c)  The LDEQ has issued numerous Notices of Deficiency and Compliance Orders to Defendant in relation to, *inter alia*, Facility emissions. Examples of LDEQ findings include:

      i.   On April 17, 2019, the LDEQ issued a Deficiency Clear Letter in response to an odor complaint for spills at the gooseneck vents involving several tanks and asphalt odors.

      ii.   In an Enforcement Memo dated March 4, 2020, Defendant was cited for operating a hot oil heater and fire water pump engines without permit;

     iii.   In a Compliance Order authored by the LDEQ dated March 5, 2020, Defendant was cited for operating a hot oil heater and fire water pump engines without permit as well as for the failure to maintain records of Toxic Air Pollutions (TAPS) and Volatile Organic Compounds (VOC);

   d)  A group of impacted residents formed the community group, "Jefferson Orleans Irish Channel Neighbors (JOIN) for Clean Air". They obtained 800 signatures for a petition protesting Defendant's emissions; and

   e)  There have been multiple media reports regarding the Facility's noxious odor emissions.

25.    The Facility has emitted, and continues to emit, preventable noxious odors that are noticeable beyond the bounds of its property.

26.    Defendant continues to operate its Facility in violation of Louisiana law and operating permits.

27.    The noxious odors are offensive to the Plaintiffs and putative Class Members and would be offensive to reasonable people of ordinary health and sensibilities.

28.    The noxious odors have caused property damage and substantially interfered with the abilities of the Plaintiffs and putative Class to reasonably use and enjoy their homes and properties.

29.    The invasion of the Plaintiffs' and putative Class' properties by noxious odors has reduced the value of those properties.

30.    The Plaintiffs and the putative Class are a limited subset of the broader community, namely owners/occupants and renters of residential properties who live within the Class Area and fit within the Class definition.

31.    Members of the public including, but not limited to, businesses, employees, commuters, tourists, visitors, minors, customers, clients, students, and patients have been harmed

by the noxious odors emitted from the Facility into public spaces. However, unlike the Plaintiffs

and putative Class, members of the public who are outside of the Class definition have not suffered

damages in the form of diminished property values and/or the loss of use and enjoyment of their

private property.

32. Defendant knew about its substantial noxious odor emissions through numerous

complaints, LDEQ action, the JOIN for Clean Air petition, and media attention.

33. Defendant intentionally, knowingly, willfully, recklessly, and/or negligently failed

to properly construct, maintain, and/or operate the Facility. Defendant caused an invasion of the

Plaintiffs' and putative Class' properties by noxious odors on frequent, intermittent, and reoccurring

occasions too numerous to list individually.

## CLASS ACTION ALLEGATIONS

### A. Definition of the Class

34. Plaintiffs seek to represent a class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within one
> and three-quarter (1.75) miles of the Facility property boundary.**

(the "**Class**" or "**Class Members**"). The definitional Class boundary is subject to modification as

discovery discloses the location of all persons properly included in the Class. Plaintiffs reserve the

right to propose one or more sub-classes if discovery reveals that such sub-classes are appropriate.

35. This action is appropriate for determination through the Louisiana Class Action

procedure (LA C.C.P. art. 591, *et seq*.) for the following reasons:

a) The Class, which includes hundreds of members, is so numerous that joinder of
all members is impracticable;

b) There are substantial questions of law and fact common to the Class, including
those set forth in greater particularity herein;

c) Questions of law and fact which are all common to the Class predominate over
any questions of law or fact affecting only individual members of the Class;

d) The claims of the representative Plaintiffs are typical of the claims of the Class;

e) A class action provides a fair and efficient method for adjudication of the
controversy;

f) The relief sought in this class action will effectively and efficiently provide relief
to all members of the Class;

g) There are no unusual difficulties foreseen in the management of this class action;
and

h) Plaintiffs, whose claims are typical of those of the Class, through their
experienced counsel, will zealously and adequately represent the Class.

**B. Numerosity**

36.     There are approximately 4,350 separate residences within the Class Area. Accordingly, the members of the Class are so numerous that joinder of all parties is clearly impracticable.

37.     Further, the prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

**C. Commonality**

38.     Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

a)  Whether and how the Defendant wrongfully, intentionally, knowingly, recklessly, and/or negligently failed to maintain and operate the Facility, thereby causing noxious odors to invade their properties;

b)  Whether Defendant owed any duties to the Class Members;

c)  Which duties Defendant owed to the Class Members;

d)  Which steps Defendant has and has not taken in order to control the emission of noxious odors through the maintenance and operation of the Facility;

e)  Whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

f)  Whether it was reasonably foreseeable that Defendant's failure to properly maintain and operate the Facility would result in an invasion of the Class Members' property interests;

g)  Whether the degree of harm suffered by the Class Members constitutes a substantial annoyance, interference, or deprivation with their use and enjoyment of their properties; and

h)  The proper measure of damages incurred by the Class Members.

**D. Typicality**

39.     The claims of the named Plaintiffs are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

40.     The claims of the named Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failures of the Defendant to properly construct, maintain and operate the Facility.

41.     All Class Members have suffered injury in fact as a result of the invasion of their

7

properties by noxious odors emitted by Defendant's Facility. The noxious odors interfere with their ability to use and enjoy their homes and have diminished their property values.

**E. Adequacy of Representation**

42.     Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by the Plaintiffs as representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and they do not have interests adverse to the Class.

43.     Plaintiffs have retained the services of counsel who are experienced in complex class action litigation, and in particular class actions involving environmental concerns, including the emission of noxious odors. To best represent the interests of the Class, Martzell, Bickford & Centola has agreed to work with Liddle Sheets Coulson PC in this matter. Liddle Sheets Coulson PC has litigated over one hundred cases across the nation involving the environmental contamination of neighborhoods, often by noxious odors emitted from industrial/commercial facilities. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiffs and all absent Class Members.

**F. Class Treatment is the Superior Method of Adjudication**

44.     A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

   c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

   d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

   f) Plaintiffs seek equitable relief relating to Defendant's common actions and failures to act, and the equitable relief sought would commonly benefit the Class as a whole;

   g) Litigating these claims in one action will achieve efficiency and promote judicial economy; and

8

h) The proposed class action is manageable.

## CAUSE OF ACTION I
## NUISANCE

45. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

46. Defendant owed, and continues to owe, a duty to the Plaintiffs and Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

47. The noxious odors which entered the Plaintiffs' and Class' properties originated from the Facility, which was improperly and unreasonably constructed, maintained, and/or operated by Defendant.

48. The noxious odors invading the Plaintiffs' and Class' properties are indecent and offensive to people with ordinary health and sensibilities, and they obstruct the free use of their properties so as to substantially and unreasonably interfere with the enjoyment of life and property. This includes but is not limited to:

a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and discomfort including, but not limited to, creating a reluctance to invite guests to their homes and preventing the Plaintiffs and Class Members from utilizing the outdoor areas of their respective properties.

49. The Plaintiffs' and Class' properties are situated in such proximity to Defendant's Facility as to constitute "neighboring" properties, in that they are near enough to be impacted by the tangible effects of noxious odors emitted from the Facility.

50. By constructing and then failing to reasonably repair, maintain, and operate the Facility, thereby causing unreasonable noxious odors to invade the Plaintiffs' and Class' properties, Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class' properties.

51. As a foreseeable, direct, and proximate result of the forgoing misconduct of the Defendant, the Plaintiffs and Class suffered damages to their properties as alleged herein.

52. The Plaintiffs and Class Members did not consent to the invasion of their properties by Defendant's noxious odors, which is ongoing and constitutes a nuisance.

53. The damages suffered by the Plaintiffs and Class are uniquely injurious to those

9

parties because they suffer harm relating to the use and enjoyment of their lands and properties, and decreased property values, which are not harms suffered by the general public.

54.    The general public is also impacted by the Facility's noxious odors. Many members of the general public are impacted when they work, study, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property, or decreased property values.

55.    Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

56.    Defendant's substantial and unreasonable interference with the Plaintiffs' and Class' use and enjoyment of their properties constitutes a nuisance. Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION II
## NEGLIGENCE

57.    Plaintiffs restate all allegations of this Complaint as if fully restated herein.

58.    Defendant owed, and continues to owe, a duty to the Plaintiffs and Class to operate and maintain the Facility in a reasonable manner and to reasonably prevent the fugitive emission of noxious odors.

59.    Defendant breached its duties by negligently and improperly constructing, maintaining and operating the Facility, which was the direct and proximate cause of the invasion by noxious odors upon the Plaintiffs' and Class' homes, lands, and properties on occasions too numerous to list individually.

60.    Such invasions by noxious odors were the foreseeable result of the foregoing conduct of Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of their properties and the diminution of property values.

61.    By failing to properly construct, maintain and operate the Facility, Defendant failed to exercise the duty of ordinary care and diligence.

62.    Defendant knowingly, recklessly, and with a conscious disregard for the rights of the Plaintiffs and Class allowed conditions to exist and perpetuate that caused noxious odors to invade the Plaintiffs' and Class' properties.

63.     Defendant's negligence was committed with a conscious indifference to the harm caused to the Plaintiffs' and Class' properties, which entitles the Plaintiffs and Class to an award for compensatory, injunctive, exemplary, and/or punitive relief.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.  Certification of the proposed Class pursuant to LA C.C.P. art. 591, *et seq.*;

B.  Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.  Judgment in favor of the Plaintiffs and Class Members as against Defendant;

D.  An award to the Plaintiffs and Class Members for actual, compensatory, and punitive damages, including pre- and post- judgment interest;

E.  An award of attorneys' fees and costs, including pre- and post- judgment interest;

F.  An Order holding that the entrance of the aforementioned noxious odors upon the Plaintiffs' and Class' properties constituted a nuisance;

G.  An Order holding that the Defendant was negligent in causing noxious odors to repeatedly invade and interfere with the Plaintiffs' and Class' private residential properties;

H.  An award to the Plaintiffs and Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and

I.  Such further relief, both general and specific, that this Honorable Court deems just and proper.

Dated: June 8, 2022                         Respectfully submitted,

                                            **MARTZELL, BICKFORD & CENTOLA**

                                            Scott R. Bickford (#1165)
                                            Lawrence J. Centola (#27402)
                                            Neil F. Nazareth (#28969)
                                            Jason Z. Landry (#33932)
                                            Spencer R. Doody (#27795)
                                            Jeremy J. Landry (#30588)
                                            338 Lafayette Street
                                            New Orleans, Louisiana 70130
                                            T: (504) 581-9065
                                            E: srb@mbfirm.com
                                            E: lcentola@mbfirm.com
                                            E: nnazareth@mbfirm.com
                                            E: jzl@mbfirm.com
                                            E: srd@mbfirm.com
                                            E: jjl@mbfirm.com

                                            AND

11

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

Steven D. Liddle*
Nicholas A. Coulson*
Lance Spitzig*
*Pro hac vice applications to be submitted
**LIDDLE SHEETS COULSON PC**
975 E. Jefferson Avenue
Detroit, MI  48207
T: (313) 392-0015
E: sliddle@lsccounsel.com
E: ncoulson@lsccounsel.com
E: lspitzig@lsccounsel.com
*Attorneys for the Plaintiffs & Putative Class*

**PLEASE SERVE:**

**BWC HARVEY, LLC**
**f/k/a BLACKWATER HARVEY, LLC**
through the Louisiana Long Arm Statue
1111 Bagby Street
Suite 1800
Houston, Texas 77002