UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIMBERLY TERRELL, *et al.*

VERSUS

BWC HARVEY, LLC f/k/a
BLACKWATER HARVEY, LLC

CIVIL ACTION

NO. 22-2323

SECTION M (5)

## <u>ORDER & REASONS</u>

Before the Court is a motion to dismiss filed by defendant BWC Harvey LLC f/k/a Blackwater Harvey LLC ("BWC").[1]  Plaintiffs Kimberly Terrell and Kelly Donahue ("Plaintiffs") respond in opposition.[2]  BWC replies in further support of its motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion to dismiss in part and denying it in part.

## I.  BACKGROUND

This environmental tort litigation arises from the operation of a hazardous liquid storage and transportation facility owned by BWC and located in Harvey, Louisiana.  Plaintiffs allege, in their individual capacity and on behalf of a putative class, that the facility emits excessive noxious odors that have invaded their properties and the properties of the putative class situated within 1.75 miles of the facility's property boundary.[4]  These odors, Plaintiffs contend, are the result of BWC's failure to adequately control fugitive emissions from the facility, which has precluded them from

---

[1] R. Doc. 13.  Prior to certification of the class, only the named plaintiffs' substantive claims are before the Court.  *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 n.5 (5th Cir. 1994) ("Since there was no class certification, we treat this case as one brought by the named plaintiffs individually.") (citing *Kaplan v. Utilicorp United, Inc.*, 9 F.3d 405, 407 (5th Cir. 1993)); *Chauvin v. State Farm Mut. Auto Ins. Co.*, 2007 WL 2903321, at *4 (E.D. La. Oct. 2, 2007) ("It is true that when a lawsuit is never certified as a class action, it must be treated as a case 'brought by the named plaintiffs individually, not as members of a class.'") (quoting *Kaplan*, 9 F.3d at 407).
[2] R. Doc. 16.
[3] R. Doc. 19.
[4] R. Doc. 1-1 at 2-3.

the full use and enjoyment of their properties.[5]   On June 8, 2022, Plaintiffs filed a class action

petition for damages in Civil District Court, Parish of Orleans, State of Louisiana, seeking

monetary and injunctive relief from BWC under negligence and nuisance theories.[6]   BWC

removed the case, invoking the Court's subject-matter jurisdiction under the diversity and Class

Action Fairness Act provisions of 28 U.S.C. § 1332.[7]   Thereafter, BWC filed the instant motion to

dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs

failed to state plausible negligence and nuisance claims.[8]

## II.    PENDING MOTION

In its motion to dismiss, BWC argues that Plaintiffs failed to adequately plead plausible

claims for negligence and nuisance resulting from the alleged invasion of noxious odors into

Plaintiffs' properties from BWC's facility.[9]   Specifically, BWC contends that Plaintiffs'

negligence claim fails because they do not adequately plead a specific standard of care as required

by the Fifth Circuit in *Butler v. Denka Performance Elastomer, LLC*, 16 F.4th 427 (5th Cir.

2021).[10]   Moreover, BWC argues that the allegations fail to satisfy the damages element of a

negligence claim.[11]   In reply to Plaintiffs' opposition, BWC maintains its position that Plaintiffs

have failed to allege the duty and damages elements of their negligence claim and, additionally,

argues that they have not adequately pleaded causation.[12]   As for nuisance, BWC argues that

Plaintiffs failed to adequately plead the causation, damages, negligence, and neighbor elements

necessary for such a claim.[13]   Finally, BWC asserts that any damages incurred by Plaintiffs more

---

[5] *Id.* at 3.
[6] *Id.* at 1, 9-11.
[7] R. Doc. 1 at 1.
[8] R. Docs. 13 at 1; 13-1 at 1-2.
[9] R. Doc. 13.
[10] R. Doc. 13-1 at 8-9.
[11] *Id.* at 10.
[12] R. Doc. 19 at 5-7.
[13] R. Docs. 13-1 at 4-8; 19 at 2-5.

than a year prior to the filing of the suit are time-barred as Plaintiffs' allegations do not demonstrate the applicability of the continuing tort doctrine.[14]

      In opposition, Plaintiffs argue that they have adequately pleaded claims for negligence and nuisance.  Plaintiffs argue, in regards to the negligence claim, that they have satisfied the specific standard of care element by alleging a jurisprudential duty and by alleging that BWC operated the facility in violation of Louisiana law and operating permits.[15]  Plaintiffs further state that the causation and damages elements have been satisfied, as their petition for damages alleges that BWC's failure to "properly repair, maintain, and operate the Facility caused noxious odors to invade the properties of the Plaintiffs and Class," and those odors have prevented the full use, and diminished the value, of Plaintiffs' properties.[16]  As for their nuisance claim, Plaintiffs contend that they have adequately pleaded (1) the standard of care for such a claim, (2) causation, (3) damages, and (4) that Plaintiffs' properties and the BWC facility are neighbors.[17]  Finally, Plaintiffs reject the view that their petition fails to invoke the continuing tort doctrine so as to interrupt the running of prescription, because they have alleged that their "'properties have been, and continue to be, invaded by fugitive noxious odors emitted from the Facility.'"[18]

## III.    LAW & ANALYSIS

### A.  Rule 12(b)(6) Standard

      The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

---

[14] R. Docs. 13-1 at 10-12; 19 at 7-8.
[15] R. Doc. 16 at 14-15.
[16] *Id.* at 16.
[17] *Id.* at 6-14.
[18] *Id.* at 17 (quoting R. Doc. 1-1 at 2).

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying

pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).  Motions to dismiss are disfavored and rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### B.  Negligence Claim

Although Plaintiffs do not expressly reference the law upon which their negligence claim is based, the allegations of the petition implicate Louisiana Civil Code article 2315 because Plaintiffs assert that BWC unreasonably emits noxious fumes from its Harvey waste facility.[19] Article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315(A).  The Fifth Circuit has summarized the elements for a negligence claim in this context as follows:

> Under Louisiana law's duty-risk analysis of negligence liability, [a plaintiff] must prove five separate elements: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)."  Duty is the "threshold issue."

---

[19] R. Doc. 1-1 at 2-6.

5

*Butler*, 16 F.4th at 443 (quoting *Lemann v. Essen Lane Daiquiris*, 923 So. 2d 627, 633 (La. 2006)) (internal citation omitted).  Just as in *Butler*, the determination whether Plaintiffs adequately pleaded a claim for negligence turns on the duty element.  A complainant's allegations cannot simply "retreat to generalized grievances" to satisfy this element, but must instead "assert a 'specific standard' of care."  *Id.* at 444-45 (quoting *Lemann*, 923 So. 2d at 633).  The assertion of that specific standard requires reference to "'any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.'"  *Id.* at 445 (quoting *Lemann*, 923 So. 2d at 633).  This Court has found this burden to be satisfied when plaintiffs allege that the defendant has a duty to conform to the legal standards espoused in sections 905[20] and 2121[21] of title 33, part III, of the Louisiana Administrative Code.  *See, e.g.*, *LeBouef v. Evonik Corp.*, 2022 WL 3159920, at *6-8 (E.D. La. Aug. 8, 2022); *Jones v. Evonik Corp.*, 2022 WL 3226755, at *8-9 (E.D. La. Aug. 10, 2022); *Berthelot v. Union Carbide Corp.*, 2022 WL 3280100, at *2-3 (E.D. La. Aug. 11, 2022); *Villa v. Evonik Corp.*, 2022 WL 3285111, at *2 (E.D. La. Aug. 11, 2022); *Fortado v. Evonik Corp.*, 2022 WL 4448230, at *9-10 (E.D. La. Sept. 23, 2022).

For example, the court in *LeBouef v. Evonik Corporation* held that the plaintiff adequately stated a specific duty of care in an emissions case by "alleg[ing] the legal standards expressed in 33 La. Admin. Code Pt. III, § 905 and § 2121 and appl[ying] the facts to the standards to render her expression of the law case-specific."  *LeBouef*, 2022 WL 3159920, at *8.  The plaintiff in *LeBouef* brought a complaint against the owners and operators of a nearby petrochemical plant,

---

[20] Section 905 states in pertinent part: "[T]o aid in controlling the overall levels of air contaminants into the atmosphere, air pollution control facilities should be installed whenever practically, economically, and technologically feasible.  When facilities have been installed on a property, they shall be used and diligently maintained in proper working order whenever any emissions are being made which can be controlled by the facilities, even though the ambient air quality standards in affected areas are not exceeded."  L.A.C. 33:III.905(a).

[21] Section 2121 establishes comprehensive requirements for fugitive emission control.  *See* L.A.C. 33:III.2121.

alleging that she was exposed to unsafe levels of ethylene oxide ("EtO") emissions from the facility. *Id.* at *1.  The plaintiff's original complaint failed to reference a specific standard of care owed by the defendants, as required by *Butler*, but she amended her complaint to allege that sections 905 and 2121 governed the defendants' conduct. *Id.* at *6-7.  The court reasoned that reference to and application of these regulatory provisions satisfied *Butler*, as doing so "articulates specific legal duties to control emissions."  *Id.* at *8 ("This is a far-cry from the *Butler* plaintiff's allegations ... that generally alluded to 'unreasonably excessive emissions.'").

In reaching the same conclusion in a related EtO emissions case, the court in *Jones v. Evonik Corporation* held that reference to section 905 sufficiently alleged the specific standard of care owed by the defendants.  *Jones*, 2022 WL 3226755, at *9.  The plaintiff in *Jones* amended her complaint to cite the same two regulatory provisions as did the plaintiff in *LeBouef*.  The *Jones* court held that this was sufficient, rejecting the defendants' contention that *Butler* required the chosen "standard [to] supply a specific quantitative threshold" for emissions.  *Id.*  The court reasoned that *Butler*'s "'specific standard' requirement means that plaintiff must cite to a specific legal authority in order to establish that [the] defendant had a duty," not a specific quantitative threshold.  *Id.*; *see also Berthelot*, 2022 WL 3280100, at *3 ("*Butler* does not require a numerically specific emission threshold in every case though, because there are different standards for different types of conduct.").

Here, Plaintiffs' allegations fall somewhere in the middle of the spectrum between the complaint in *Butler* and those in cases such as *LeBouef* and *Jones*.  With respect to their negligence claim, Plaintiffs allege that BWC "owed, and continues to owe, a duty to the Plaintiffs and Class to operate and maintain the Facility in a reasonable manner and to reasonably prevent the fugitive

emission of noxious odors."[22]   By way of factual background, Plaintiffs allege that "[t]he [Louisiana Department of Environmental Quality] has issued numerous Notices of Deficiency and Compliance Orders to Defendant in relation to, *inter alia*, Facility emissions."[23]  They additionally allege that "Defendant continues to operate its Facility in violation of Louisiana law and operating permits."[24]  Moreover, Plaintiffs assert that BWC –

> is required to abate noxious odor emissions by, among other things, operating the Facility in a manner that adequately captures, controls, and mitigates those emissions so as to prevent them from escaping into the ambient air surrounding the Facility, and by implementing other reasonably available emission mitigation, elimination, and control systems at the Facility.[25]

Yet, Plaintiffs do not accompany any of these allegations with citation to a particular statute, regulatory provision, requirement imposed by BWC's operating permits, or other relevant legal authority establishing a specific duty to control emissions.  In their opposition to BWC's motion to dismiss, Plaintiffs argue that they have indeed alleged "a specific jurisprudential duty and standard of care to operate the Facility safely and prevent occurrences that can cause harm to the Plaintiffs and Class."[26]  But in support of this "jurisprudential duty" to operate the facility safely and prevent harmful occurrences, Plaintiffs erroneously rely upon *Slocum v. International Paper Co.*, 2022 WL 35429, at *1 (E.D. La. Jan. 3, 2022), an environmental tort case involving claims of negligence and nuisance for the alleged discharge of wastewater from a paper mill.[27]  Plaintiffs contend that *Slocum* stands for the proposition that simply alleging that a defendant owes a duty to operate a facility safely and to prevent harmful occurrences suffices for the specific standard of care required in negligence cases.[28]  *Slocum*, however, is inapposite, because the defendant there

---

[22] R. Doc. 1-1 at 10.
[23] *Id.* at 5.
[24] *Id.*
[25] *Id.* at 2-3.
[26] R. Doc. 16 at 15.
[27] *Id.*
[28] *Id.* at 14-15.

did not dispute the existence of a duty in that context.  *Id.* at *5 ("The Court need not discuss extensively the duty element.  It suffices to state that, as [the defendant] acknowledges, the law imposes a duty on Defendant to exercise reasonable care in relation to its operation of the Paper Mill.").  And because the issue of duty was not before the court in *Slocum*, there was no discussion of the application of *Butler* to the plaintiffs' claims.  This Court, then, declines to extend Plaintiffs' supposed "jurisprudential duty" from *Slocum* – which is indistinguishable from the generalized duty of ordinary care – in defiance of *Butler*'s requirement that Plaintiffs plead a specific standard.

Plaintiff's final assertion – that they have pleaded a specific duty by alleging that BWC "violated operating permits and emissions thresholds" – is likewise of no avail.[29]  First, this Court, in *Acosta v. Denka Performance Elastomer, LLC*, 2022 WL 3214418, at *4-5 (E.D. La. Aug. 9, 2022), held that the plaintiffs failed to adequately plead the specific duty requirement when alleging, *inter alia*, that the defendant had a duty to comply with Louisiana Department of Environmental Quality ("LDEQ") permits.  The plaintiffs there failed to "identify a particular state or federal statute, state or federal rule, or even common-law standard of care beyond the general standard of reasonableness," notwithstanding the generalized allegation that the defendant was required to adhere to state permits.  *Id.* at *5.  Accordingly, the bare assertion that BWC violated state operating permits does not adequately allege the specific duty element.  Second, although Plaintiffs argue that they alleged BWC violated "emissions thresholds" by referencing "numerous Notices of Deficiency and Compliance Orders"[30] issued by LDEQ, these allegations may provide support for the issue of breach but they fail to provide guidance as to the specific standard of care imposed by law.  Notably, the petition for damages does not mention an applicable "emissions threshold," just that BWC was cited by LDEQ for (1) a spill in 2019, (2) failure to secure permits

---

[29] *Id.* at 15.
[30] *Id.*

in 2020, and (3) failure to maintain records of toxic air pollutions and volatile organic compounds in that same year.[31]   The standard purportedly breached is not identified.   Although more detailed than the barebones allegations rejected in *Butler*, Plaintiffs still fail in their petition for damages to adequately allege a "specific standard of care on which to base a legally cognizable duty."[32]   *Id.*

Therefore, BWC's motion to dismiss is GRANTED as to Plaintiffs' negligence claim, but Plaintiffs will be given an opportunity to file an amended complaint to cure the noted pleading deficiencies.

## C. Nuisance Claim

Plaintiffs also claim that BWC is liable for nuisance.[33]   Claims for nuisance are governed by the vicinage articles of the Louisiana Civil Code – that is, articles 667 through 669.   Article 667 states in pertinent part:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 667.   Article 668, however, appears to place a limit on the type of conduct actionable under article 667, as it implies that mere inconvenience is noncognizable: "Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should

---

[31] R. Doc. 1-1 at 5.
[32] Having concluded that Plaintiffs failed to allege that BWC had a duty to conform its conduct to a specific standard of care, the Court does not now reach the issue whether Plaintiffs adequately alleged that BWC's conduct failed to conform to any such standard.
[33] R. Doc. 1-1 at 9-10.

occasion some inconvenience to his neighbor." *Id.* art. 668. Finally, notwithstanding article 668's

seeming tolerance of inconvenience, article 669 states:

> If the works or materials for any manufactory or other operation, cause an
> inconvenience to those in the same or in the neighboring houses, by
> diffusing smoke or nauseous smell, and there be no servitude established by which they are
> regulated, their sufferance must be determined by the rules of the police, or the
> customs of the place.

*Id.* art. 669. Louisiana's vicinage articles thus "'embody a balancing of rights and obligations

associated with the ownership of immovables.'" *Ellis v. Evonik Corp.*, 2022 WL 1719196, at *12

(E.D. La. May 27, 2022) (quoting *Badke v. USA Speedway, LLC*, 139 So. 3d 1117, 1126 (La. App.

2014)). While a landowner has wide latitude to "'exercise his rights of ownership in any manner

he sees fit'" and may subsequently cause some inconvenience to neighbors, activities cannot cause

"'real damage to his neighbor.'" *Id.* (quoting *Badke*, 139 So. 3d at 1126). Taken together, a valid

claim for nuisance under these articles must allege that "a defendant is: (1) a proprietor who (2)

negligently (3) conducts 'work' on his property (4) that causes damage to his neighbor." *Ictech-

Bendeck v. Progressive Waste Sols. of LA, Inc.*, 2019 WL 4111681, at *2 (E.D. La. Aug. 29, 2019).

BWC does not dispute that it is a "proprietor" conducting "work" on its property.[34]

Instead, BWC argues that Plaintiffs have failed to adequately allege the reasonable care

(negligence), causation, damage, and neighbor elements of a nuisance claim.[35] The Court will

examine each element in turn.

### 1. Reasonable Care (Negligence)

BWC argues that Plaintiffs' "[p]etition is silent" on facts alleging the company negligently

permitted excessive noxious emissions to escape the facility.[36] As this Court has recognized, "the

---

[34] *See* R. Docs. 13-1; 19.
[35] R. Docs. 13-1 at 4-8; 19 at 2-5.
[36] R. Doc. 13-1 at 8.

terms of [the negligence requirement] are prescribed by the text of the [Louisiana Civil Code]." *Ellis*, 2022 WL 1719196, at *13. Article 667 of the Code outlines the applicable standard as whether the defendant "knew, or in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." La. Civ. Code art. 667. This element does not require alleging a separate (and specific) standard of conduct or separate source of duty. *Ellis*, 2022 WL 1719196, at *13 (distinguishing "the general negligence standard under article 2315 [from] the distinct negligence requirement for a nuisance claim under Louisiana's vicinage articles," the court observed: "[U]nlike their article 2315 general-negligence claims, plaintiffs' nuisance claims do not require an allegation of a separate source of duty. The proprietor's duty to his neighbors is established by the Code itself, and it stems from the nature of the parties' relationship as neighbors.").

In *Ellis*, an environmental tort case involving claims for negligence and nuisance resulting from alleged exposure to unsafe levels of EtO emissions, the court held that the plaintiffs adequately alleged the reasonable care (negligence) standard for nuisance – that is, that the defendant knew or, in the exercise of reasonable care, should have known that its works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that it failed to exercise reasonable care – by stating that (1) the industry had longstanding knowledge of the harmful effects of EtO and (2) the defendant nevertheless did not stop the damage caused by the EtO emissions. *Id.* The court reasoned that, at the pleadings stage, these allegations were sufficient to satisfy the standard of care dictated by article 667. *Id.*; *see also Taylor v. Denka Performance Elastomer LLC* ("*Taylor II*"), 2018 WL 5786051, at *4 (E.D. La. Nov. 5, 2018) (holding same).

Here, Plaintiffs allege that BWC knew, or reasonably should have known, that the noxious odor emissions would cause damage, that the damage could have been prevented through the exercise of reasonable care, and that BWC failed to exercise reasonable care.  For example, Plaintiffs specifically allege that (1) "[t]he Facility and its emissions have been the subject of frequent and numerous complaints by residents in the nearby residential area";[37] (2) "[t]he LDEQ has identified Defendant as the 'primary source' of odors affecting residents in the Class Area";[38] (3) "[t]he LDEQ has issued numerous Notices of Deficiency and Compliance Orders to Defendant in relation to, *inter alia*, Facility emissions";[39] and (4) "Defendant knew about its substantial noxious odor emissions through numerous complaints, LDEQ action, the JOIN for Clean Air petition, and media attention."[40]  Plaintiffs also allege that BWC could have avoided the excessive emission of noxious odors through the proper design, operation, and maintenance of the facility, but failed to do so.[41]  Accordingly, at this stage, Plaintiffs have adequately alleged the reasonable care (negligence) element required for nuisance claims.

### 2.  Causation

BWC also argues that Plaintiffs have not adequately alleged the causation element of a nuisance claim, positing that the petition for damages neither provides "'individualized allegations regarding each plaintiff's experience'" nor facts "about the 'nature and degree of the intrusion, or its relative persistence or duration.'"[42]  Article 667 requires that a plaintiff prove that the defendant's use of the land caused damage to a neighbor to recover under a nuisance theory.  "For causation to be found, the defendant's actions 'need not be the sole cause, but it must be a cause

---

[37] R. Doc. 1-1 at 3.

[38] *Id.* at 5.

[39] *Id.*

[40] *Id.* at 6.

[41] *Id.* at 2-3.

[42] R. Doc. 19 at 3 (quoting *Taylor v. Denka Performance Elastomer, LLC* ("*Taylor I*"), 332 F. Supp. 3d 1039, 1054-55 (E.D. La. 2018)).

in fact, and to be a cause in fact in legal contemplation, it must have a proximate relation to the harm which occurs.'" *Ictech-Bendeck*, 2019 WL 4111681, at *5 (quoting *Lombard v. Sewerage & Water Bd. of New Orleans*, 284 So. 2d 905, 913 (La. 1973)). In *Ictech-Bendeck*, the court held that the plaintiffs adequately pleaded causation for a nuisance claim involving noxious odors emanating from a landfill by simply alleging that "the [l]andfill emits noxious odors onto neighboring properties." *Id.* The plaintiffs there had alleged that the landfill gave off "a 'noxious odor' that interfere[d] with the enjoyment of their property." *Id.* at *4 (observing that use of the term "noxious" to describe the odor yields "a reasonable inference that the odor produced by the [l]andfill is excessive and unreasonable"). The court reasoned that the allegation "is a plain, clear statement that Defendants are *causing* the foul odors to be present on and to cause damage to Plaintiffs' neighboring property." *Id.* at *5 (emphasis in original).

Here, Plaintiffs allege that "[t]hrough Defendant's construction, operation, and maintenance of the Facility, it wrongfully emits substantial and unreasonable noxious odors that physically invade the Plaintiffs' and putative Class' properties."[43] Plaintiffs go on to allege that the noxious odors "originated from the Facility,"[44] and that the odors "have caused property damage and substantially interfered with the abilities of the Plaintiffs and putative Class to reasonably use and enjoy their home and properties."[45] Additionally, the allegations state that "[t]he LDEQ has identified Defendant as the 'primary source' of odors affecting residents in the Class Area" and that BWC has received "numerous Notices of Deficiency and Compliance Orders" from the LDEQ about the facility's emissions.[46] Accordingly, the Court finds these

---

[43] R. Doc. 1-1 at 1.
[44] *Id.* at 9.
[45] *Id.* at 5.
[46] *Id.*

allegations to be "a plain, clear statement that [BWC is] causing the foul odors to be present on and cause damage to Plaintiffs' neighboring property."

BWC insists, though, that Plaintiffs' allegations fail to detail their individualized experiences and the nature and degree of the intrusion, so they have not adequately pleaded causation. In support of this argument, BWC relies on the first iteration of *Taylor v. Denka Performance Elastomer LLC* (that is, *Taylor I*), but that decision is immediately distinguishable. In *Taylor I*, the court took issue with the plaintiffs' generic and formulaic allegations that chloroprene emissions were sufficient to cause them physical discomfort and drive them indoors when such conclusory allegations were unaccompanied by any factual content detailing "what about the emissions ma[de the plaintiffs] remain indoors or how they [were] aware of the emissions." *Taylor I*, 332 F. Supp. 3d at 1054-55. The court asked:

> What precisely is the source of the physical discomfort and annoyance? A noxious smell? Throat irritation? How does this nuisance physically manifest, if at all? The plaintiffs simply omit any facts that might indicate the nature or degree of intrusion, or its relative persistence or duration.

*Id.* at 1054. It should be noted that the court intimated that an allegation of "noxious smell" would remedy the deficiency. *Id.*; *see also Ictech-Bendeck*, 2019 WL 4111681, at *4 ("[I]n *Taylor v. Denka Performance Elastomer LLC* [that is, *Taylor I*], another section of this Court suggested that a Plaintiff could properly allege an article 667 claim by pleading that an odor was 'noxious' and, as a result, caused annoyance."). The court in *Taylor I* proceeded to dismiss the nuisance claim without prejudice, providing plaintiffs with an opportunity to amend to cure their pleading deficiencies. *Taylor I*, 332 F. Supp. 3d at 1055. Thereafter, the court in *Taylor II* held that the plaintiffs had cured the deficiencies in pleading their nuisance claim by detailing in their amended complaint "individualized descriptions and facts [of] each plaintiff's alleged harm due to chloroprene exposure," including various physical injuries allegedly caused by their exposure to

the emissions, such as "chronic headaches, fatigue, ... and dizziness." *Taylor II*, 2018 WL 5786051, at *4. Here, Plaintiffs allege that noxious odors from BWC's facility have invaded their homes and properties, causing discomfort, coughing, lightheadedness, and a restriction on the full use of their properties, both indoors and outdoors.[47] They also allege, numerous times, that the odors invading their homes were "noxious," and, when considering the allegations as a whole, continuous. Accordingly, the Court finds that Plaintiffs have adequately alleged causation at this pleading stage.

### 3. Damage

BWC next argues that Plaintiffs have failed to adequately allege that they have been damaged by the emissions from the facility, as required to state a nuisance claim.[48] To state a claim under article 667, Plaintiffs must allege that BWC's emissions either deprive them of the enjoyment of their property or cause "any damage" to them. This examination "requires the court 'to determine the reasonableness of the conduct in light of the circumstances,' including considering 'factors such as the character of the neighborhood, the degree of intrusion and the effect of the activity on the health and safety of the neighbors.'" *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 198 (5th Cir. 2018) (quoting *Badke*, 139 So. 3d at 1126). "In the context of an article 667 claim based on the proprietor's land giving off odors, the Louisiana Supreme Court has held that odors only constitute a nuisance if they are 'excessive [and] unreasonable in degree, and of such character as to produce actual, physical discomfort and annoyance to a person of ordinary sensibilities.'" *Ictech-Bendeck*, 2019 WL 4111681, at *4 (quoting *Meyer v. Kemper Ice Co.*, 158 So. 378, 380 (La. 1934)). In *Ictech-Bendeck*, the court

---

[47] R. Doc. 1-1 at 3. Plaintiffs chronicle additional complaints of injury asserted by other putative class members, including headaches, nausea, burning throat, difficulty in breathing, and choking. *Id.* at 3-5.

[48] R. Doc. 13-1 a 5-6.

held that the plaintiffs adequately alleged damage in a nuisance claim by alleging that noxious odors interfered with the use of their property.  Here, Plaintiffs repeatedly allege that noxious odors physically invaded their properties, expressly stating that the odors prevented the full use and enjoyment of their homes and properties, precluded them from using the outdoor spaces of their properties, and caused physical and emotional discomfort.[49]  Accordingly, Plaintiffs have adequately pleaded the damage element of a nuisance claim.

### 4.  Neighbor

Finally, BWC argues that Plaintiffs have not adequately alleged that they are neighbors of the facility emitting noxious odors.[50]  There exists considerable disagreement as to the precise meaning of the term "neighbor" as used in article 667.  *See In re Katrina Canal Breaches Consol. Litig.*, 647 F. Supp. 2d 644, 734 (E.D. La. 2009) (observing that "there is a paucity of guidance in the law as to the proximity required so as to be a 'neighbor' for purposes of art. 667"), *aff'd in part and rev'd in part on other grounds*, 696 F.3d 436 (5th Cir. 2012); *Slocum*, 2022 WL 35429, at *14 (observing that "the Fifth Circuit and Louisiana appeals courts" consider the term "neighbor" as used in article 667 to be "'indefinite and refers to any landowner whose property may be damaged irrespective of the distance his property may be from that of the proprietor whose work caused the damage'" (quoting *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 386 (5th Cir. 2001))).  While the proximity required to be considered a neighbor is uncertain, the Fifth Circuit has concluded that "a complaint nonetheless must establish *some* degree of propinquity, so as to substantiate the

---

[49] R. Doc. 1-1 at 3-6, 9.

[50] R. Docs. 13-1 at 7-8.  BWC additionally argues that Plaintiffs have not adequately pleaded an ownership interest in their properties so as be neighbors of the facility.  R. Doc. 19 at 4.  This argument, however, falls short, as "a plaintiff's interest in neighboring property can be an ownership interest, leasehold interest, third-party interest, or more generally the interest of 'a person whose right derives from the owner.'"  *Ictech-Bendeck*, 2019 WL 4111681, at *3 (quoting *Yokum v. 615 Bourbon St., L.L.C.*, 977 So. 2d 859, 874 (La. 2008)).  Regardless, Plaintiffs have adequately alleged an interest in the neighboring properties by stating, for example, that their "homes" and "properties" have been invaded by noxious odors and that the odors have interfered with their ability to "reasonably use and enjoy their homes and properties."  R. Doc. 1-1 at 1, 5; *see Ictech-Bendeck*, 2019 WL 4111681, at *3.

allegation that activity on one property has caused damage to another." *Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 731 (5th Cir. 2017) (emphasis in original). "What qualifies as 'some propinquity,' however, is fact specific and may change based on the harm alleged (for example, the radius of neighbors surrounding a loud manufacturing plant may be much smaller than the radius of neighbors surrounding a nuclear waste facility)." *Ictech-Bendeck*, 2019 WL 4111681, at *3 (citing *Bd. of Comm'rs*, 850 F.3d at 731). What *is* certain is that complainants need not be adjoining landowners to the facility creating the alleged nuisance. *See Bd. of Comm'rs*, 850 F.3d at 731 (citing *Roberts*, 266 F.3d at 386); *see also Slocum*, 2022 WL 35429, at *15 (holding that plaintiffs within three miles of the offending paper mill were "neighbors" within the meaning of article 667); *Ellis*, 2022 WL 1719196, at *1, 13 (holding that plaintiffs living as far away as approximately seven miles from the facility allegedly emitting toxic emissions were neighbors for purposes of a nuisance claim).

Here, Plaintiffs allege that their properties are within 1.75 miles of the property boundary of BWC's facility.[51]   Plaintiffs also allege that "[t]he LDEQ has identified Defendant as the 'primary source' of odors affecting residents in the Class Area"[52] and that the class area has been defined as those residing "within 1.75 miles of the Facility property boundary," which includes Plaintiffs.[53]   Accordingly, Plaintiffs have adequately alleged that they are neighbors of the BWC facility for purposes of pleading a nuisance claim.

---

[51] R. Doc. 1-1 at 2.  Accepting this allegation as true, as is required under Rule 12(b)(6), the Court rejects, at this juncture, BWC's argument that Plaintiffs "provide no facts about how close they are to the BWC facility."  R. Doc. 13-1 at 9.
[52] R. Doc. 1-1 at 5.
[53] *Id.* 1-1 at 2.

### D. Injunctive Relief

Plaintiffs also request injunctive relief in conjunction with their negligence and nuisance claims. BWC argues that Plaintiffs are not entitled to such relief because they fail to plead adequate facts to support injunctive relief.[54] Requests for injunctive relief are evaluated under a familiar four-factor test:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs argue that they have suffered and continue to suffer irreparable injury because an injunction is the only remedy that will enable them to fully use and enjoy their properties.[55] But the petition is silent about why monetary damages are said to be inadequate to compensate them for those injuries. Additionally, the petition does not "attempt to calculate any potential hardships" to BWC should injunctive relief be granted, *Acosta*, 2022 WL 3214418, at *6, except to say that BWC will only be required to comply with its "regulatory obligations and legal duties."[56] Yet, the petition fails to articulate what these obligations and duties are. The petition does, however, adequately plead the benefit the general public would receive should an injunction abate the facility's emissions.[57] Therefore, Plaintiffs have failed to allege the facts necessary to support injunctive relief, but they will be given the opportunity to file an amended complaint to cure the noted pleading deficiencies.

---

[54] R. Doc. 13-1 at 15.
[55] R. Doc. 16 at 18.
[56] *Id.*
[57] R. Doc. 1-1 at 3, 5-6, 10.

### E. Punitive Damages and Attorney's Fees

Plaintiffs additionally assert claims for punitive damages and attorney's fees. BWC, in its motion to dismiss, argues that Louisiana law does not authorize recovery for punitive damages and attorney's fees in this context.[58] Plaintiffs do not address BWC's arguments and, instead, voluntarily "withdraw their claims for punitive damages and attorney's fees."[59] Accordingly, Plaintiffs' claims for punitive damages and attorney's fees are dismissed with prejudice.

### F. Prescription and the Continuing Tort Doctrine

Finally, BWC argues that any claim for damage Plaintiffs suffered more than a year before the initiation of the action is time-barred because the petition fails to allege facts sufficient for the application of the continuing tort doctrine.[60] Plaintiffs, however, have alleged that the invasion of the noxious odors allegedly emitted by BWC's facility are ongoing.[61] Therefore, Plaintiffs have adequately alleged facts to demonstrate the applicability of the continuing tort doctrine. *See Villa*, 2022 WL 3285111, at *2.

## IV.   CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that BWC's motion to dismiss (R. Doc. 13) is GRANTED in part and DENIED in part. The motion is granted as to Plaintiffs' negligence, punitive damages, and attorney's fees claims, as well as the request for injunctive relief. The motion is denied as to Plaintiffs' nuisance claim, at this pleading stage of the case.

IT IS FURTHER ORDERED that Plaintiffs' claims for punitive damages and attorney's fees are DISMISSED WITH PREJUDICE and Plaintiffs' claims for negligence and injunctive

---

[58] R. Doc. 13-1 at 12-13, 15-16.
[59] R. Doc. 16 at 2.
[60] R. Docs 13-1 at 10-12; 19 at 7-8.
[61] R. Doc. 1-1 at 2, 5-6.

relief are DISMISSED WITHOUT PREJUDICE.  Plaintiffs have fifteen (15) days from the date

of this Order & Reasons to file an amended complaint to cure the pleading deficiencies noted

herein concerning their claims for negligence and injunctive relief.[62]

New Orleans, Louisiana, this 8th day of November, 2022.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[62] Rule 15 allows a court to grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Fifth Circuit has recognized that "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of the pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).