UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIMBERLY TERRELL, *et al.*                            CIVIL ACTION

VERSUS                                                      NO. 22-2323

BWC HARVEY, LLC f/k/a                         SECTION M (5)
BLACKWATER HARVEY, LLC

## ORDER & REASONS

Before the Court is a motion for partial dismissal filed by defendant BWC Harvey LLC f/k/a Blackwater Harvey LLC ("BWC").[1] Plaintiffs Kimberly Terrell and Kelly Donahue ("Plaintiffs") respond in opposition.[2] BWC replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion.

**I.     BACKGROUND[4]**

This environmental tort litigation arises from the operation of a hazardous liquid storage and transportation facility owned by BWC and located in Harvey, Louisiana. Plaintiffs filed an amended complaint in which they allege, in their individual capacity and on behalf of a putative class, that the facility emits excessive noxious odors that have invaded their properties and the properties of the putative class situated within 1.75 miles of the facility's property boundary.[5] These odors, Plaintiffs contend, are the result of BWC's failure to adequately control fugitive emissions from the facility and have precluded them from the full use and enjoyment of their

---

[1] R. Doc. 24.
[2] R. Doc. 25.
[3] R. Doc. 28.
[4] A more complete recitation of the facts can be found in the Court's November 9, 2022 Order & Reasons. R. Doc. 20.
[5] R. Doc. 21 at 2-3.

properties.⁶  In its first motion to dismiss, BWC argued that Plaintiffs failed to state claims for negligence, nuisance, injunctive relief, attorney's fees, and punitive damages.⁷  The Court granted the motion in part and denied it in part, holding that, at the pleadings stage of the litigation, Plaintiffs had failed to state a claim for negligence and injunctive relief but adequately stated a claim for nuisance under Louisiana law.⁸  In dismissing Plaintiffs' negligence claim, the Court concluded that they failed to adequately state the specific standard of care required by Louisiana law as set forth in *Butler v. Denka Performance Elastomer, LLC*, 16 F.4th 427 (5th Cir. 2021).⁹  The Court, however, afforded Plaintiffs the opportunity to amend their complaint to cure this deficiency.¹⁰  Plaintiffs subsequently filed an amended complaint in which they allege that section 905 of title 33, part III, of the Louisiana Administrative Code ("section 905") provides the specific standard of care applicable to BWC.¹¹  In response, BWC filed the instant motion for partial dismissal,¹² in which it argues that Plaintiffs' repleaded negligence claim should be dismissed for failure to allege a specific standard of care because section 905 is inapplicable to the facts alleged in the amended complaint.¹³

## II. PENDING MOTION

In its current motion to dismiss, BWC "raises one targeted issue – whether Plaintiffs have alleged a 'specific standard' for the negligence claim under the facts in the Amended Complaint."¹⁴

---

⁶ *Id.* at 3.
⁷ R. Doc. 13.
⁸ R. Doc. 20 at 10, 18-19.  The Court also dismissed Plaintiffs' claims for punitive damages and attorney's fees, as Plaintiffs effectively conceded that such relief was unavailable under Louisiana law in this context. *See id.* at 20; R. Doc. 16 at 2 (stating that "Plaintiffs withdraw their claims for punitive damages and attorney's fees ....").
⁹ R. Doc. 20 at 10.
¹⁰ *Id.* at 10, 19.  Plaintiffs were also permitted the opportunity to amend their complaint to address the noted deficiencies in their claim for injunctive relief.  *Id.* at 19.  Plaintiffs' amended complaint, however, abandons any claim to such relief.  *Compare* R. Doc. 1-1 at 12, *with* R. Doc. 21 at 15.
¹¹ R. Doc. 21 at 13-14 (citing L.A.C. 33:III.905).
¹² R. Doc. 24.
¹³ R. Doc. 24-1 at 1.
¹⁴ *Id.*

Specifically, BWC contends that the negligence claim fails because the Louisiana regulatory provision cited by Plaintiffs – section 905 – is not "a legally cognizable 'specific standard' for their negligence claim."[15] BWC maintains that because section 905 regulates "air contaminants" and fails to define this term to include odors – which, BWC asserts, is the only emission at issue in the litigation – Plaintiffs cannot use the regulation to supply the specific standard necessary for a negligence claim.[16] Moreover, BWC asserts that, even if section 905 applies to odors, Plaintiffs' "generic[] reference" to that provision alone fails to demonstrate its relevance in this particular context.[17] In short, BWC asserts that section 905 is inapplicable because it "simply does not mention, much less regulate, odors."[18]

In opposition, Plaintiffs argue that (1) section 905 does apply and (2) they have alleged facts demonstrating section 905's relevance to the case.[19] Plaintiffs reject BWC's characterization of their allegations as limited to "odors" because, they say, their amended complaint also references "odorous air contaminants, fumes, chemicals, and gases."[20] The emissions described in the amended complaint, Plaintiffs assert, clearly implicate the type of "air contaminants" regulated by the plain language of section 905.[21] Plaintiffs urge, then, that because they have invoked a suitable regulation to supply the specific standard, and they have applied that standard to the facts alleged, their negligence claim should survive this pleadings-stage challenge to its sufficiency.[22]

---

[15] *Id.* at 1-2.
[16] *Id.* at 5-7.
[17] *Id.* at 4.
[18] R. Doc. 28 at 3.
[19] R. Doc. 25 at 1.
[20] *Id.* at 5 (citing R. Doc. 21 at 4-7, 14).
[21] *Id.* at 3.
[22] *Id.* at 5, 8.

3

### III. LAW & ANALYSIS

#### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts

4

pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### B. The Specific Standard of Care and Section 905

BWC argues that Plaintiffs' claim for negligence must be dismissed because they fail to allege a specific standard of care.[23] The Fifth Circuit has held that, "[w]hile Louisiana law does impose a 'universal duty' on defendants in a negligence action to use 'reasonable care,' plaintiffs are still required to assert a 'specific standard' of care." *Butler*, 16 F.4th at 444-45 (internal citation omitted) (quoting *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1086 (La. 2009), and *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006)). The pleading of a specific standard

---

[23] R. Docs. 24-1 at 1; 28 at 1.

requires reference to "'any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.'" *Id.* at 445 (quoting *Lemann*, 923 So. 2d at 633). In the context of negligence claims involving chemical emissions, section 905 has been found to supply the required specific standard. *See Spencer v. Valero Refin. Meraux, LLC*, 2022 WL 305319, at *3 (La. App. 2022) (holding that defendant "had a duty to control the overall levels of air contaminants entering the surrounding area by conforming its conduct to a specific standard of care under [section 905]"); *Jones v. Evonik Corp.*, 2022 WL 3226755, at *9 (E.D. La. Aug. 10, 2022) (finding "persuasive" the conclusion that section 905 "gives rise to a specific standard of care in [the chemical emissions] context"); *LeBouef v. Evonik Corp.*, 2022 WL 3159920, at *7 (E.D. La. Aug. 8, 2022) (observing that "state court precedent bolsters the finding that refineries and like facilities are held to a specific standard of care pursuant to the Louisiana Administrative Code Title 33, Part III," including section 905).

In the amended complaint, Plaintiffs allege that section 905 imposes a duty on BWC to "install, use, and maintain air pollution control systems at [BWC's facility] to control odor emissions."[24] BWC argues that section 905 cannot supply a "specific standard" relevant to the factual allegations in Plaintiffs' amended complaint because the regulation only covers "air contaminants" and the term "odor" does not fall within the regulation's definition of air contaminants.[25] Section 905 states in pertinent part:

> [T]o aid in controlling the overall levels of air contaminants into the atmosphere, air pollution control facilities should be installed whenever practically, economically, and technologically feasible. When facilities have been installed on a property, they shall be used and diligently maintained in proper working order whenever any emissions are being made which can be controlled by the facilities, even though the ambient air quality standards in affected areas are not exceeded.

---

[24] R. Doc. 21 at 14.
[25] R. Docs. 24-1 at 4-6; 28 at 3.

L.A.C. 33:III.905(A).  The term "air contaminants," as used in title 33, is defined as "particulate matter, dust, fumes, gas, mist, smoke, or vapor, or any combination thereof produced by process other than natural."  L.A.C. 33:III.111(A).  BWC contends that because "odor" is not included in the definition of air contaminants, section 905 "simply does not ... regulate[] odors."[26]  Moreover, BWC asserts that "odor" is commonly understood to mean a scent or smell, but section 905 regulates "actual physical substances, not personal sensations."[27]  In furtherance of this argument, BWC submits that because odors are the subject of a separate regulatory provision in title 33 – section 2901 – the omission of the term from the definition of air contaminants in section 905 demonstrates that odors are not addressed by that regulation.[28]  Finally, BWC maintains that even if section 905 is applicable, Plaintiffs must allege it in conjunction with *another* regulatory provision to satisfy the specific standard requirement.[29]  The Court will take these arguments in turn.

BWC's arguments concerning the term "odor" are unavailing.  First, although BWC is correct in its observation that Plaintiffs use the word "odors" dozens of times in their amended complaint, the complaint also makes multiple references to "fumes,"[30] which is a term included in title 33's definition of air contaminants.  *See* L.A.C. 33:III.111(A).  Second, authoritative dictionaries belie BWC's contention that odors fall outside the regulatory compass of section 905, as the term "fume" is defined to include "odor."  *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 920 (1967) (defining the term to include "smoke," "vapor," and "odor"); OXFORD ENGLISH DICTIONARY (online ed. 2022) (defining the term to include "[o]dorous smoke" and

---

[26] R. Doc. 28 at 3.
[27] R. Doc. 24-1 at 5 & n.4.
[28] R. Docs. 24-1 at 5-6; 28 at 4.
[29] R. Doc. 28 at 5 n.3.
[30] R. Doc. 21 at 5-6.

"[o]dour or odorous exhalation"). Third, the amended complaint, fairly read, reflects that the terms "odor" and "fume" are used interchangeably. Accordingly, at this pleadings stage, the Court cannot conclude on this basis that section 905 is inapplicable to the facts alleged in the amended complaint.[31]

The Court holds that Plaintiffs' reference to section 905 as the specific standard is sufficient to plead a negligence claim in this case. The Court rejects BWC's contention that Plaintiffs are required to allege that BWC breached the duties imposed by section 905 in conjunction with another regulatory provision to satisfy the specific standard requirement. In *Spencer*, the court held that the defendant "had a duty to control the overall levels of air contaminants entering the surrounding area by conforming its conduct to a specific standard of care under [section 905]." 2022 WL 305319, at *3. And, while other sections of this court have found that citation to sections 905 and 2121 was sufficient to allege a specific standard, they did not hold that the invocation of multiple regulatory provisions was necessary. *See LeBouef*, 2022 WL 3159920, at *8 (holding that "it is *sufficient* that Plaintiff alleges the legal standards expressed in [sections 905 and 2121] and applies the facts to the standards to render her expression of the law case-specific") (emphasis added); *Jones*, 2022 WL 3226755, at *9 (observing that "the Louisiana Fourth Circuit Court of Appeals [in *Spencer*] has unequivocally held that [section 905] gives rise to a specific standard of care in this context, and the Court finds such reasoning to be persuasive"). Accordingly, the Court finds that Plaintiffs sufficiently pleaded a specific standard by alleging the duty imposed on BWC by operation of section 905.

---

[31] Given this result, the Court need not reach the question whether section 2901 regulates odors to the exclusion of all other provisions in title 33. But, on the surface, the plain language of sections 905 and 2901 tends to undermine BWC's argument on this point. Section 2901's "purpose ... is to establish an ambient air standard for odors." L.A.C. 33:III.2901(A). Section 905, however, seeks to "control[] the overall level of air contaminants ... even though the ambient air quality standards in affected areas are not exceeded." L.A.C. 33:III.905(A).

8

The same holds true for Plaintiffs' application of section 905 to the facts such that their "expression of the law [is] case-specific." *LeBouef*, 2022 WL 3159920, at *8. Here, Plaintiffs allege that "[p]ursuant to [section 905], Defendant owed, and continues to owe, a duty to the Plaintiffs and Class to operate and maintain the Facility in a reasonable manner and to reasonably prevent the fugitive emission of noxious odors."[32] They go on to allege that the "duty to conform to [section 905] requires Defendant to install, use, and maintain air pollution control systems at the Facility to control odor emissions," and provide further allegations as to why such air pollution control systems are feasible.[33] BWC breached this duty, Plaintiffs claim, by "failing to install, use, and/or maintain feasible air pollution control systems, thus failing to control air contaminants (i.e. odors) emitted by the Facility."[34] Plaintiffs do not allege what chemicals or other substances constitute the air contaminants or cause the fumes or odors. But not yet having had the benefit of discovery, they profess they cannot now know. As the case develops, this should change, and Plaintiffs will be held to an increasingly higher standard. At this pleadings stage of the litigation, however, the Court finds that Plaintiffs have sufficiently alleged a specific standard and applied that standard to the facts of the case. *See LeBouef*, 2022 WL 3159920, at *7-8; *Jones*, 2022 WL 3226755, at *8-9.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that BWC's motion for partial dismissal (R. Doc. 24) is DENIED.

---

[32] R. Doc. 21 at 13.
[33] *Id.* at 13-14.
[34] *Id.* at 14.

9

New Orleans, Louisiana, this 27th day of January, 2023.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE